UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC-SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC#:                            │
│ DATE FILED: 3/31/2021            │
└─────────────────────────────────┘
```

LIBERTY HIGHRISE PVT. LTD.*,*

                    Plaintiff,

      v.

PRAXIS ENERGY AGENTS DMCC and
PRAXIS ENERGY AGENTS PTE LTD.,

                    Defendant.

No.  20-CV-2427 (RA)

MEMORANDUM
OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Liberty Highrise Pvt. Ltd. brings this action for breach of contract, conversion, and unjust enrichment alleging that Defendants Praxis Energy Agents DMCC and Praxis Energy Agents Pte Ltd. wrongfully retained payment for marine fuel products ("bunkers") that were to be delivered to a maritime vessel operated by Plaintiff.  Now before the Court is defendant Praxis Energy Agents Pte Ltd's motion to dismiss the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), and *forum non conveniens*.  For the reasons that follow, that motion is denied.

## BACKGROUND

The  Court  draws  the  following  facts  from  the  complaint,  Dkt.  1  ("Complaint"),  the Declaration of Rajat Roy, an employee of Plaintiff, Dkt. 20 ("Roy Decl.") and the exhibits attached thereto.  For  the  purposes  of  this  motion,  the  Court  accepts  all  of  Plaintiffs'  well-pled  factual

allegations as true. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (per curiam).

## I.      Factual Background

Plaintiff Liberty Highrise Pvt. Ltd., an Indian company, "was the operator of the M.V. MENALON." Compl. ¶¶ 1-2. Defendant Praxis Energy Agents DMCC ("Praxis Dubai") is a company organized under the laws of the United Arab Emirates ("UAE"), with its principal place of business in Dubai, UAE. *Id.* ¶ 3. Defendant Praxis Energy Agents Pte. Ltd. ("Praxis Singapore") is a Singapore company with its principal place of business in that country. *Id.* ¶ 4.

### A.      Purchase of Bunkers for M.V. MENALON

On October 9, 2019, as operator of the M.V. MENALON (the "Vessel"), Plaintiff "purchased 500-800 mt of IFO and 50-80 mt of LSMGO ('bunkers') from Praxis Dubai for delivery to the Vessel" in Singapore between October 18 and November 7, 2019. *Id.* ¶ 10. Plaintiff alleges that "[t]he contract for the delivery of bunkers was subject to Praxis Energy's 'General Terms and Conditions for the Sale of Marine Bunker Fuels and Lubricants,'" which provides that "all disputes and/or claims would be submitted to the United States District Court for the Southern District of New York." *Id.* ¶¶ 21-22, Ex. 9. On October 22, 2019 "Praxis Dubai sent a Proforma Invoice to [Plaintiff] in the amount of $205,110.00 for 535 mt of IFO and 50 mt of LSMGO." *Id.* ¶ 13. The following day, Plaintiff transferred $205,127.85 to Praxis Dubai's bank account, *id.* ¶ 14, as indicated by a funds-transfer order marked Invoice # 23107, *id.* Ex. 4. On or about November 2, 2019, as the Vessel arrived in Singapore to receive the bunkers, "Praxis Dubai failed to supply them to the Vessel." *Id.* ¶ 15. Plaintiff subsequently "placed Praxis Dubai on notice that its failure to deliver the bunkers and all resulting damages would be for Praxis Dubai's account." *Id.*

Plaintiff began pursuing both Praxis Dubai and Praxis Singapore for the value of the bunkers, including an email demand for payment dated November 29, 2019.  *Id.* ¶ 19.  That same day, in response to that email, Theo Kyriazis, identifying himself as Legal Advisor for Praxis Singapore, stated that "Praxis-Singapore and/or Praxis-USA, do not hold any vendor/client relationship with [Plaintiff] or with their captioned vessel mv Menalon," and that "we hold no common business/relationship/ownership/administration with [Praxis Dubai]."  *Id.* Ex. 8.  Kyriazis's email address is listed as legal.control@praxisenergyagents.com on that correspondence  *See id.*

### B.    Purchase of Bunkers for M.V. GOLD GEMINI

In a separate transaction, "[o]n or about September 30, 2019 Liberty Highrise purchased 400-750 mt of IFO and 50-100 mt of LSMGO from Praxis Dubai to be delivered to M.V. GOLD GEMINI at Singapore with a delivery date range of 14-30 October 2019."  *Id.* ¶ 17.  "Although the GOLD GEMINI bunkers were purchased from Praxis Dubai, Liberty Highrise was directed to make payment to Praxis Singapore's bank account at United Overseas Bank Ltd.  Liberty Highrise paid the GOLD GEMINI invoice in the amount of $235,291.05 on November 1, 2019."  *Id.*  Plaintiff made that payment on November 1, 2019, as indicated in a funds-transfer order marked invoice # 23077.  *Id.* Ex. 6.

### C.    Confusion About Payment

Plaintiff alleges that "Praxis Dubai confirmed receipt of payment in the amount of $205,110 for the bunkers to be delivered to the M.V. MENALON," on or about November 6, 2019.  *Id.* ¶ 18. According to Plaintiff, "Praxis Dubai improperly allocated payment of the MENALON invoice against the GOLD GEMINI invoice which was on different payment terms."  *Id.*  To support that allegation, Plaintiff attaches a November 6, 2019 email with the subject line "MV MENALON – BUNKER STEM – WITHOUT PREJUDICE," in which Theo Kyriazis states "Finally, the monies

received this morning and as such offsets our invoice #23077 for mv Gold Gemini, less late fees." *Id.* Ex. 7.  The signature line in that email identifies Kyriazis as "Legal Advisor" for Praxis Energy Agents and "Praxis Energy Agents DMCC."  *Id.*

## II.    Procedural History

On March 19, 2020, Plaintiff filed suit against Praxis Dubai and Praxis Singapore pursuant to this Court's admiralty jurisdiction, *see* 28 U.S.C. § 1333.  The Complaint brings three causes of action stemming from Praxis Dubai's alleged retention of the $205,110 paid to supply the Vessel with bunkers: breach of maritime contract, conversion, and unjust enrichment.  Plaintiff further alleges an alter-ego relationship among Defendants, pointing to Praxis Singapore's receipt of the payment for MV GOLD GEMINI, Kyriazis's role as manager of Praxis Dubai and director and sole shareholder of Praxis Singapore, Kyriazis's communications with Plaintiff on behalf of both Defendants, and the entities' shared "General Terms and Conditions for the Sale of Marine Bunker Fuels and Lubricants." Compl. ¶¶ 21-25.  According to Plaintiff, "Praxis Singapore is the alter-ego of Praxis Dubai because it dominates and disregards Praxis Dubai's corporate form to the extent that Praxis Singapore is actually carrying on Praxis Dubai's business and operations as if the same were its own, or vice versa." *Id.* ¶ 26.

On March 23, 2020, the Clerk of Court issued summonses to both Defendants.  Dkts. 6-7.  On July 27, 2020, Plaintiff filed a declaration stating that it had served Praxis Singapore but that it had not yet served Praxis Dubai, because that company had apparently relocated to Greece.  Dkt. 11. Praxis Singapore filed the instant motion on August 7, 2020.  Dkt. 13.  On August 14, 2020, Plaintiff wrote a letter informing the Court that it had learned that Praxis Dubai's license to operate in the Dubai Multi Commodities Centre Free Zone had expired on March 5, 2020.  Dkt. 17.   In that letter, Plaintiff argued that service on the "alter ego" of Praxis Singapore constituted effective service on

4

Praxis Dubai. *Id.* In response, and reiterating the arguments made in the instant motion, Praxis

Singapore averred that it "is not an alter ego of [Praxis Dubai] for the purpose of personal jurisdiction

over Praxis Singapore." Dkt. 23. Plaintiff has not since been able to effect service on Praxis Dubai.

## STANDARD OF REVIEW

When responding to a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R.

Civ. P. 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the

defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.

1999). Where, as here, no discovery has been conducted, the Court "assumes the truth of the plaintiff's

factual allegations for purposes of the motion." *Dorchester Fin. Sec, Inc,* 722 F.3d at 85 (internal

quotation marks omitted). In the absence of a full-blown evidentiary hearing, the Court may consider

pleadings and affidavits, which it must construe "in the light most favorable to plaintiff[], resolving

all doubts in [its] favor." *Id.* (internal quotation marks omitted). A plaintiff need persuade the Court

only that its factual allegations constitute "a *prima facie* showing" of jurisdiction, which

"suffices, *notwithstanding any controverting presentation by the moving party,* to defeat the motion."

*Id.* at 86 (internal quotation marks omitted; emphasis in *Dorchester*).

With respect to *forum non conveniens,* district courts have "broad discretion" to dismiss cases

pursuant to that doctrine. *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 81 F.3d 1224,

1232 (2d Cir. 1996). When assessing a motion for *forum non conveniens,* the Court begins with the

general proposition that plaintiff's choice of forum is entitled to deference, but the "degree of

deference given to a plaintiff's forum choice varies with the circumstances." *Iragorri v. United Tech.*

*Corp.,* 274 F.3d 65, 71 (2d Cir. 2001). That presumption is weaker when the plaintiff is a corporation

that is not based in the United States. *See id.*

## DISCUSSION

**I.      Plaintiff Has Adequately Pled Personal Jurisdiction Over Praxis Singapore as an Alter Ego**

Plaintiff premises the assertion of personal jurisdiction over Praxis Singapore on the "General Terms and Conditions for the Sale of Marine Bunker Fuels and Lubricants," to which Praxis Singapore is a party, and which states that "any disputes and/or claims arising in connection with these Conditions and/or any agreement governed by them, shall be submitted to the United States District Court for the Southern District of New York."  Compl. Ex. 9 § 22.02.  Plaintiff does not allege, however, that it signed any contract with Praxis Singapore or that Praxis Singapore played any role in the MV MENALON transaction on which this suit is premised.  Consequently, this Court's jurisdiction over Praxis Singapore hinges on its status as an alter ego of Praxis Dubai, as Plaintiff alleges.

A court may exercise two types of personal jurisdiction: specific jurisdiction, when the cause of action sued upon arises out of the defendant's contacts with the forum and general jurisdiction, which permits a court to exercise its power based on a defendant's general contacts with a forum in a case where the subject matter of the suit is unrelated to those contacts.  *See Porina v. Marward Shipping Co*., 521 F.3d 122, 129 (2d Cir. 2008) (applying federal maritime law).  Pursuant to the limits of the Due Process Clause of the Constitution, a court may exercise personal jurisdiction over a non-resident only "where the maintenance of the suit would not offend traditional notions of fair play and substantial justice."  *Id.* (internal quotation marks omitted).  Courts have nonetheless long recognized that parties can consent to personal jurisdiction, and that such consent "eliminates the need for a separate Due Process analysis."  *EGI-VSR, LLC v. Huber*, No. 19 Civ. 6099 (ER), 2020 WL 1489790, at *5 (S.D.N.Y. Mar. 27, 2020) (citing cases).  As relevant here, parties can consent to

personal jurisdiction through forum-selection clauses in contractual agreements.  *See, e.g., D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006).

Plaintiff's showing of personal jurisdiction depends on the allegation that Praxis Singapore consented to litigating this dispute in the Southern District of New York through its alter ego Praxis Dubai.  Plaintiff does not argue that Praxis Singapore transacted any business or had any contacts with the United States, let alone this District.  It claims only that the forum-selection clause in the terms and conditions that allegedly governed the MENALON transaction evidences Praxis Singapore's consent to jurisdiction in this Court.  It is undisputed, however, that Plaintiffs contracted only with Praxis Dubai with respect to the MENALON transaction, from which all the claims in this action arise.  *See* Roy Decl. ¶ 3 ("On September 30, 2019 and on October 9, 2019 Plaintiff entered into two separate contracts with Praxis Energy Agents DMCC ('Praxis Dubai') for the purchase of bunkers for delivery to the M.V. GOLD GEMINI and M.V. MENALON, respectively, at Singapore.").  Plaintiff alleges no independent relationship or contract with Praxis Singapore with respect to that transaction.  Accordingly, Praxis Dubai is the only Defendant that could have expressly consented to litigate disputes over that contract in this district.  A forum-selection clause, of course, applies only to actions that relate to the contract in which that clause appears.  To overcome that limitation, Plaintiff alleges that Praxis Singapore is the "alter ego" of Praxis Dubai such that the actions of the latter entity—including consent to personal jurisdiction—can fairly be attributed to the former.

The Court finds that Plaintiff has alleged sufficient facts to "pierce the corporate veil" of Praxis Singapore in this instance, permitting the finding that the two entities are alter egos of one another for purposes of this motion.  The Second Circuit Court of Appeals has outlined the prerequisites for piercing the corporate veil under federal maritime law: "'[The defendant] must have

used [the corporate entity] to perpetrate a fraud or have so dominated and disregarded [the corporate entity]'s corporate form that [the corporate entity] primarily transacted [the defendant]'s personal business rather than its own corporate business.'" *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 53 (2d Cir. 2008) (*quoting Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980)).  Factors that weigh in favor of a finding that two entities are alter egos include overlap in staff, officers, and directors, absence of arms-length dealing, blurred lines of corporate control, and intermingled financial transactions.  *See William Passalacqua Builders, Inc. v. Resnick Developers S., Inc*., 933 F.2d 131, 139–40 (2d Cir. 1991); *see also REA Navigation, Inc. v. World Wide Shipping, Ltd.,* No. 08 Civ. 9951 (SAS), 2009 WL 3334794 at *3 (S.D.N.Y. Oct. 14, 2009) (stating that payment of alleged alter ego's debts, shared email, office, telephone number and staff supported alter-ego finding); *Budisukma Permai SDN BHD v. N.M.K. Prods. & Agencies Lanka (Private) Ltd.,* 606 F. Supp. 2d 391, 399-400 (S.D.N.Y. 2009) (holding that sale of the same products, common addresses, "common, three-person core of directors and shareholders" constituted adequate allegations of alter-ego liability).  "Instead of a firm rule, the general principle guiding courts in determining whether to pierce the corporate veil 'has been that liability is imposed when doing so would achieve an equitable result.'"  *Williamson*, 542 F.3d at 53 (quoting *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 601 (2d Cir. 1989)).

Under that standard, the Court finds Plaintiff's allegations sufficient at this stage to plead that Defendants are alter egos of one another.  Although Plaintiff does not allege any fraud, it has sufficiently alleged the disregard of any corporate distinction between Praxis Dubai and Praxis Singapore.  First, Plaintiff alleges overlap in both leadership and ownership.  As indicated by emails sent to Plaintiff on behalf of both entities, Theodosis Kyriazis acts as "legal advisor" to both Praxis Dubai, *see* Compl. Ex 7, and Praxis Singapore, *see id*. Ex. 8.  Kyriazis is also listed as the sole

shareholder of Praxis Singapore, *id.* Ex. 11, and the manager of Praxis Dubai, *id.* Ex. 10.   Second, Praxis Singapore's alleged receipt of payment for the Gemini bunkers—goods supplied pursuant to the contract with Praxis Dubai—provides a paradigmatic example of an intermingled financial transaction.  *See id.* Ex. 6.  At this stage of the proceeding, the Court can reasonably infer from this "high degree of intermingling" that the two entities did not engage with one another at arms-length. *See William Passalacqua Builders, Inc.*, 933 F.2d at 140.  Third, the "General Terms and Conditions for the Sale of Marine Bunker Fuels and Lubricants," of which Plaintiff has proffered two distinct versions, purport to apply to both Praxis Dubai and Praxis Singapore.  *See Id.* Ex. 9; *see also* Roy Decl. Ex. A.  In other words, both entities conduct the same type of business, selling the same products under the same terms and conditions.  Lastly, Plaintiff has alleged the use of shared email.  Not only do both entities share the same domain name, praxisenergyagents.com., but Kyriazis communicated on behalf of both entities from the same email address, legal.control@praxisenergyagents.com.  *See* Compl. Exs. 7, 8.  Considering the totality of the above allegations, which the Court accepts as true for purposes of this motion, the Court finds that Plaintiff has sufficiently established the blurring of "the lines of corporate control and responsibility" among Praxis Dubai and Singapore.  *See William Passalacqua Builders, Inc.*, 933 F.2d at 140.  Accordingly, Plaintiff has adequately pled that Praxis Singapore is an alter ego of Praxis Dubai.  That Praxis Dubai, the contracting Defendant in this action, has been able to evade service also suggests that piercing the corporate veil in this instance would achieve an equitable result. *See Williamson*, 542 F.3d at 53.  Plaintiff, of course, will ultimately have to furnish admissible evidence of alter-ego status in order to establish Praxis Singapore's liability in this action.

Having concluded that Praxis Singapore should be treated as an alter ego to the contracting party at this stage, the Court finds that terms and conditions of sale proffered by Plaintiff suffice for

a prima facie showing of jurisdiction over Defendants.  "[A]lter egos are treated as one entity for purposes of jurisdiction."  *D'Amico Dry D.A.C. v. Primera Mar. (Hellas) Ltd.*, 348 F. Supp. 3d 365, 390 (S.D.N.Y. 2018) (citing *William Passalacqua Builders, Inc.*, 933 F.2d at 142-43), *aff'd sub nom. d'Amico Dry d.a.c. v. Sonic Fin. Inc.,* 794 F. App'x 127 (2d Cir. 2020).  Accordingly, allegations that Praxis Dubai consented to litigating in this Court would establish a prima facie showing of jurisdiction over its alter ego Praxis Singapore.  The MENALON contract states only that the buyer accepts "OUR STANDARD TERMS AND CONDITIONS."  Compl. Ex. 1.  Plaintiff has submitted two different versions of those terms, one effective as of February 2013, *see* Compl. Ex. A, and the other as of December 2017, *see* Roy Decl. Ex. A.  Both versions not only purport to apply to both Defendants but also provide for all disputes to be litigated in this District.  Praxis Singapore disputes that either version applied to the transaction at issue, and proffers another set of terms and conditions, dated as of August 30, 2019 that purports to select Singapore as the forum for any dispute.  Mot. Ex. A.  Those terms are unique to Praxis Singapore and do not purport to bind Praxis Dubai.  *See id.*  That deficiency is not relevant at this stage, however, because the Court must construe evidence in the light most favorable to Plaintiff and resolve all doubts in its favor on a 12(b)(2) motion.  *See Dorchester Fin. Sec., Inc,* 722 F.3d at 85.  Accordingly, Plaintiff's prima facie showing of personal jurisdiction— *i.e.*, the combination of its well-pled allegations of alter-ego status and its proffer of the forum-selection cause—is sufficient to defeat the motion at this stage, "notwithstanding [the] controverting presentation" by Praxis Singapore.  *Id.* at 86 (internal quotation marks and emphasis omitted).

## II.  Venue

Praxis Singapore additionally states—in one paragraph of argument—that venue is improper in this District because none of the requirements of 28 U.S.C. § 1391, the federal venue statute, are met.  Mot. at 2.  Because this action sounds in admiralty, however, that chapter does not apply.  *See*

28 U.S.C. § 1390(b).  "In the admiralty context, forum selection clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'"  *Am. Int'l Grp. Eur. S.A. (Italy) v. Franco Vago Int'l, Inc.,* 756 F. Supp. 2d 369, 376 (S.D.N.Y. 2010) (*quoting M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10 (1972)); *see also Ferrostaal, Inc. v. M/V EAGLE,* No. 02 Civ. 1887 (NRB), 2003 WL 21496689, at *1 (S.D.N.Y. June 30, 2003) ("It is a well-established principle of admiralty law that forum selection clauses are heavily weighted.").  As Praxis Singapore has made no showing of unreasonableness in this case, the Court denies the motion to dismiss on the basis of Fed. R. Civ. P. 12(b)(3).

### III.   *Forum Non Conveniens*

Lastly, Defendant argues that the Court should dismiss this action on the basis of *forum non conveniens* as this "[t]his dispute has nothing to do with the U.S. generally or this District particularly."  Mot. at 2.  The Court declines to exercise its discretion to dismiss on those grounds in light of the forum-selection clause and in deference to Plaintiff's decision to file suit in this District.

District courts "enjoy broad discretion in applying [the] principle" of *forum non conveniens*. *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005).  "A federal court has discretion to dismiss a case on the ground of *forum non conveniens* when an alternative forum has jurisdiction to hear [the] case, and ... trial in the chosen forum would establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience, or ... the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (internal quotation marks omitted).  "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (internal quotation marks

11

omitted).   The Supreme Court has stated that "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* (internal quotation marks omitted and alterations adopted).

As explained above, the Court finds that Plaintiff has alleged sufficient facts to establish that the contracting parties agreed that any disputes stemming from the MENALON transaction would be litigated in this District.   Because Praxis Singapore has not proffered any reason why that clause does not merit deference, the parties' choice of forum counsels against dismissal on the basis of *forum non conveniens*.

## CONCLUSION

For the foregoing reasons, Defendant's motion is denied.   The Clerk of Court is respectfully directed to terminate the item at docket number 13.

By no later than April 23, 2021, the parties shall jointly submit to the Court a proposed case management plan and scheduling order.   A template for the order is available at https://nysd.uscourts.gov/hon-ronnie-abrams.   Counsel for both parties shall appear for a status conference on April 30, 2021 at 2:00 p.m.   The Court will hold this conference by telephone.   The parties shall use the dial-in information provided below to call into the conference: Call-in Number: (888) 363-4749; Access Code: 1015508.   This conference line is open to the public.

SO ORDERED.

Dated:        March 31, 2021
              New York, New York

_____
Ronnie Abrams
United States District Judge