UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LIBERTY HIGHRISE PVT. LTD.,

                Plaintiff,

      v.

PRAXIS ENERGY AGENTS DMCC,
PRAXIS ENERGY AGENTS PTE LTD.,
PRAXIS ENERGY AGENTS, LLC, and
THEODOSIOS KYRIAZIS,

                Defendants.

No. 20-CV-02427 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiff Liberty Highrise Pvt. Ltd. brings this action for breach of contract, conversion, and unjust enrichment alleging that Defendants Praxis Energy Agents DMCC ("Praxis Dubai"); Praxis Energy Agents Pte Ltd. ("Praxis Singapore"); Praxis Energy Agents, LLC ("Praxis USA"); and Theodosios Kyriazis wrongfully retained payment for certain marine fuel products ("bunkers") that were to be delivered to a maritime vessel operated by Plaintiff. The Court previously denied a motion to dismiss the initial Complaint, and Plaintiff subsequently filed an Amended Complaint. Defendants Praxis USA and Theodosios Kyriazis now move to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), improper venue under Rule 12(b)(3), and the *forum non conveniens* doctrine. For the reasons that follow, that motion is granted in part and denied in part. Specifically, the Court grants the motion to dismiss the action against Kyriazis for lack of personal jurisdiction, albeit without prejudice, as Plaintiff has not plausibly alleged he is an alter ego of Praxis Dubai; the Court denies the motion to dismiss the action against Praxis USA for the same reasons identified in its prior order with respect to Praxis Singapore.

## BACKGROUND

The Court assumes the parties' general familiarity with the facts in this case. Plaintiff, an Indian company, operated the M.V. MENALON (the "Vessel"), and purchased bunkers from Praxis Dubai for delivery to the Vessel. Am. Compl. ¶¶ 11–16. Plaintiff alleges that the contract for the delivery of bunkers was subject to Praxis Dubai's "General Terms and Conditions for the Sale of Marine Bunker Fuels and Lubricants." *Id*. ¶ 23 (the "General Terms"). In key part, those Terms provide that "all disputes and/or claims would be submitted to the United States District Court for the Southern District of New York." *Id*. ¶ 24. Plaintiff alleges that, after it remitted payment for the bunkers, *id*. ¶ 16, the Vessel arrived in Singapore to receive the fuel and "Praxis Dubai failed to supply [it] to the Vessel," *id*. ¶ 17.

Plaintiff separately purchased bunkers from Praxis Dubai to be delivered to the M.V. GOLD GEMINI in Singapore. *Id*. ¶ 19. Plaintiff alleges that, although the bunkers were purchased from Praxis Dubai, it was directed to make payment to Praxis Singapore's bank account. *Id*. As relevant to its jurisdictional allegations, Plaintiff asserts that Praxis Dubai "improperly allocated payment of the MENALON invoice against the GOLD GEMINI invoice which was on different terms." *Id*. ¶ 20.

## PROCEDURAL HISTORY

On March 19, 2020, Plaintiff filed this action against Praxis Dubai and Praxis Singapore pursuant to this Court's admiralty jurisdiction, *see* 28 U.S.C. § 1333, stating claims arising from Praxis Dubai's alleged retention of the funds paid to supply the Vessel with bunkers, breach of maritime contract, conversion, and unjust enrichment. Plaintiff further alleged an alter ego relationship between Praxis Dubai and Praxis Singapore—thus giving the Court personal jurisdiction over the latter entity—by pointing to Praxis Singapore's receipt of the payment for

2

M.V. GOLD GEMINI, Kyriazis's role as manager of Praxis Dubai and director and sole shareholder of Praxis Singapore, and Kyriazis's communications on behalf of both Defendants. Praxis Singapore filed a motion to dismiss, averring that it was not an alter ego of Praxis Dubai for the purposes of personal jurisdiction over Praxis Singapore.

In a Memorandum Opinion and Order issued March 31, 2021, the Court denied Praxis Singapore's motion to dismiss. *See Liberty Highrise Pvt. Ltd. v. Praxis Energy Agents DMCC*, No. 20-cv-2427 (RA), 531 F. Supp. 3d 854 (S.D.N.Y. 2021). The Court rejected arguments that it lacked personal jurisdiction, reasoning that Plaintiff had plausibly alleged that Praxis Singapore was an alter ego of Praxis Dubai, and had thus consented to the Court's personal jurisdiction under the General Terms. *Id.* at 860. The Court also rejected Praxis Singapore's argument that the action be dismissed for improper venue, *see* Fed. R. Civ. P. Rule 12(b)(3), and the doctrine of *forum non conveniens*. *Id.* at 863.

Plaintiff has since filed an Amended Complaint, as is relevant here, now adding allegations that Defendants Praxis USA and Kyriazis also had an alter ego relationship to Praxis Dubai and Praxis Sinagpore. Am. Compl. ¶¶ 25–35. Praxis USA and Kyriazis have moved to dismiss the Amended Complaint, likewise arguing that this Court lacks personal jurisdiction over them because Plaintiff's alter ego claims fail as a matter of law. Mot. at 1–7. They further argue that that the Court should dismiss the Amended Complaint against Praxis USA and Kyriazis for improper venue and *forum non conveniens*.

## LEGAL STANDARD

When responding to a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). Where, as here,

discovery has not yet been conducted, the Court "assumes the truth of the plaintiff's factual allegations for purposes of the motion." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013). The Court may consider pleadings and affidavits, which it construes in the light most favorable to the plaintiff, resolving all doubts in its favor. *See id.* The Court also considers the exhibits attached to the Amended Complaint given that they are integral to the Complaint, were incorporated by reference, and are "matters of which judicial notice may be taken." *Alvarez v. Cnty. of Orange*, 95 F. Supp. 3d 385, 392 (S.D.N.Y. 2015) (permitting consideration of such documents on a motion to dismiss); *see also Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (noting a "complaint is deemed to include any written instrument attached to it as an exhibit").

A plaintiff must persuade the Court that its factual allegations constitute "a *prima facie* showing" of jurisdiction, which "suffices, *notwithstanding any controverting presentation by the moving party*, to defeat the motion." *Dorchester Fin. Sec.*, 722 F.3d at 86. The legal standard governing pre-discovery motions to dismiss for improper venue under Federal Rule of Civil Procedure Rule 12(b)(3) is similar to a motion to dismiss for lack of personal jurisdiction. *See Platina Bulk Carriers Pte Ltd. v. Praxis Energy Agents DMCC*, No. 20-cv-4892 (NRB), 2021 WL 4137528, at *2 (S.D.N.Y. Sept. 10, 2021). "In both instances, plaintiff has the burden of making a *prima facia* showing that jurisdiction and venue is proper." *Id.* (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)).

District courts have "broad discretion" to dismiss cases pursuant to the *forum non conveniens* doctrine. *Scottish Air Int'l, Inc. v. British Caldeonian Grp., PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996). When assessing a motion for *forum non conveniens*, the Court begins with the general proposition that a plaintiff's choice of forum is entitled to deference, but the "degree of

deference given to a plaintiff's forum choice varies with the circumstances." *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001). The presumption is weaker when the plaintiff is a corporation not based in the United States. *See id.*

## DISCUSSION

### I. The Amended Complaint Plausibly Alleges Praxis USA is an Alter Ego

Plaintiff's assertion of personal jurisdiction over Praxis USA rests on the premise that, as an alter ego of Praxis Dubai, Praxis USA is bound by Praxis Dubai's agreement to litigate disputes arising out of its contract with Plaintiff in the Southern District of New York. For substantially the same reasons the Court previously articulated in denying the motion to dismiss the original Complaint against Praxis Singapore, the Court agrees.

The law governing personal jurisdiction and the existence of corporate alter egos in this matter is by now familiar to the parties. Courts may exercise two types of personal jurisdiction: specific jurisdiction, when the cause of action sued upon arises out of the defendant's contacts with the forum, and general jurisdiction, which permits a court to exercise its power based on a defendant's general contacts with a forum regardless of whether the subject of the suit is related to those contacts. *See Porina v. Marward Shipping Co.*, 521 F.3d 122, 127–28 (2d Cir. 2008) (applying federal maritime law). Although a court's exercise of personal jurisdiction over a non-resident is limited by the Due Process Clause of the Constitution, parties can consent to personal jurisdiction, thereby "eliminat[ing] the need for a separate Due Process analysis." *EGI-VSR, LLC v. Huber*, No. 19-cv-6099 (ER), 2020 WL 1489790, at *5 (S.D.N.Y. Mar. 27, 2020) (citing cases). Specifically, parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements. *See, e.g., D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006).

In order to pierce the corporate veil under federal maritime law and thus establish alter-ego

status, a plaintiff must demonstrate that a defendant "used the corporate entity to perpetrate a fraud or ha[s] so dominated and disregarded the corporate entity's corporate form that the corporate entity primarily transacted the [defendant's] business rather than its own corporate business." *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 53 (2d Cir. 2008) (cleaned up). Although there is no "firm rule" in determining whether two entities are alter egos, "the general principle guiding courts in determining whether to pierce the corporate veil 'has been that liability is imposed when doing so would achieve an equitable result.'" *Id.* (quoting *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 601 (2d Cir. 1989)). Factors weighing in favor of finding that entities are alter egos include overlap in staff, officers, and directors, absence of arms-length dealing, blurred lines of corporate control, and intermingled financial transactions. *See William Passalacqua Builders, Inc. v. Resnick Devs., Inc.*, 933 F.2d 131, 139–40 (2d Cir. 1991).

Plaintiff's allegations are sufficient at this stage to plead that Praxis USA and Praxis Dubai are alter egos. First, Plaintiff alleges that Praxis USA, Praxis Singapore and Praxis Dubai had overlapping leadership and ownership. According to Plaintiff, Kyriazis acts as "director and sole shareholder of Praxis Singapore," "manager of Praxis Dubai," and the "director and registered agent for Praxis USA," indicating a unified corporate structure. Am. Compl. ¶ 26. Second, Plaintiff alleges that the General Terms for the sale apply to Praxis USA, Praxis Singapore and Praxis Dubai, Am. Compl. ¶ 30, indicating, as the Court found in considering the motion to dismiss the original Complaint, that the companies "conduct the same type of business, selling the same products under the same terms and conditions," *Liberty Highrise*, 531 F. Supp. 3d at 861. Third, Plaintiff has alleged the parties used identical communication and use of web services. Kyriazis allegedly communicated "on behalf of all three Praxis companies," for instance, as the legal advisor under the address legal.control@praxisenergyagents.com. All three Praxis companies

were copied in email correspondence with Liberty Highrise, and all three Defendants allegedly use a common web address, http://www.praxisagents.com.  Am. Compl. ¶¶ 27–28.

In denying the motion to dismiss the original Complaint, the Court relied, in part, on the allegation that Praxis Singapore received payment for the GOLD GEMINI bunkers, which were supplied in connection with the contract with Praxis Dubai.  The Court found that the transaction suggested a "high degree of intermingling" between the two entities and supported the inference that the two entities did not engage with one another at arms-length.  *Liberty Highrise*, 531 F. Supp. 3d at 861.  Though Plaintiff has not alleged a similar specific financial transaction between Praxis USA and Praxis Dubai here, the absence of such a transaction does not mandate dismissal.  The Second Circuit has clearly instructed that "there is no set rule as to how many of [the alter ego] factors must be present in order to pierce the corporate veil," and "the general principle followed by the courts has been that liability is imposed when doing so would achieve an equitable result."  *William Wrigley*, 890 F.2d at 600–01; *see also Mohegan Lake Motors, Inc. v. Maoli*, 559 F. Supp. 3d 323, 339 (S.D.N.Y. 2021).  Indeed, in deciding this issue with respect to the same Praxis entities in a separate case last year, Judge Buchwald found that the plaintiff had plausibly alleged that Praxis USA was an alter ego of Praxis Dubai.  *Platina Bulk Carriers*, 2021 WL 4137528, at *5.  The court held that the entities' use of a common web address, identical terms and conditions, and overlapping corporate structure amounted to a *prima facie* showing that they were alter egos—absent relying on any purported specific payments between Praxis USA and Praxis Dubai.  *Id.*

Accepting the allegations in the Amended Complaint as true, the Court thus concludes that Plaintiff has sufficiently established "the lines of corporate control and responsibility" among the various entities were "blurred," such that Praxis USA—like Praxis Singapore, *see Liberty*

7

*Highrise*, 531 F. Supp. 3d 859–62—is an alter ego of Praxis Dubai. *William Passalacqua Builders*, 933 F.2d at 140. As the Court noted in denying the motion to dismiss the original Complaint, however, Plaintiff will have to provide admissible evidence of alter-ego status in order to establish Praxis USA's liability in this action.

**II.      The Amended Complaint Does Not Plausibly Allege Kyriazis is an Alter Ego**

Whether the Court should exercise personal jurisdiction over Kyriazis by piercing the corporate veil, however, is not as straightforward. In considering whether an individual and a corporate entity are alter egos of one another, "[i]t is well settled that . . . courts are reluctant to disregard the corporate entity." *William Wrigley*, 890 F.2d at 600 (collecting cases). Indeed, the law "allows individuals to incorporate for the very purpose of avoiding personal liability." *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979). Thus, "the corporate veil will be pierced only when it can be demonstrated that the '[corporate] form has been used to achieve fraud, or when the corporation has been so dominated by an individual . . . and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own.'" *William Wrigley*, 890 F.2d at 600 (quoting *Gartner*, 607 F.2d at 586). Courts consider several factors in making this determination, including:

> (1) the intermingling of corporate and personal funds, *Walkovsky v. Carlton*, [18 N.Y.2d 414 (1966)]; (2) undercapitalization of the corporation, *Gartner v. Snyder*, 607 F.2d 582 (2d Cir. 1979); and (3) failure to maintain separate books and records or other formal legal requirements for the corporation, *D.C. Auld Company v. Park Electrochemical Corporation*, 553 F. Supp. 804 (E.D.N.Y. 1982).

*A/S Domino Mobler v. Braverman*, 669 F. Supp. 592, 594 (S.D.N.Y. 1987).[1]

Application of these factors to warrant finding an individual to be an alter ego of a corporate

---

[1] As with determining whether corporate entities are alter egos, there is "no set rule as to how many of these factors must be present in order to pierce the corporate veil," and the "general principle followed by the courts has been that liability is imposed when doing so would achieve an equitable result." *William Wrigley*, 890 F.2d at 600–01 (citing *Brunswick Corp. v. Waxman*, 599 F.2d 34, 35 (2d Cir. 1979)).

8

entity "can be difficult, particularly in the case of small privately held corporations where the trappings of sophisticated corporate life are rarely present." *William Wrigley*, 890 F.2d at 601.  In those instances, "preoccupation with questions of structure . . . would inevitably beckon the end of limited liability for small business owners, many, if not most, of whom have chosen the corporate form to shield themselves from unlimited liability and potential financial ruin." *Id.*; *see Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 17–18 (2d Cir. 1996). Therefore, the Court must consider the "common characteristics broadly utilized by reviewing courts in deciding whether to disregard the corporate form." *William Wrigley*, 890 F.2d at 601.  It must also keep in mind that, "[i]n each case" in which reviewing courts have disregarded the corporate form, "the evidence demonstrated an abuse of that form through on-going fraudulent activities of a principal, or a pronounced and intimate commingling of identities of the corporation and its principal." *Id*.

The Amended Complaint makes no such specific allegations with respect to Kyriazis here. It nowhere alleges, for example, that Kyriazis conducted business in his own name, offered to sell bunkers personally, or somehow made himself individually subject to the General Terms and Conditions that Plaintiff entered into with Praxis Dubai.  Instead, Plaintiff variously alleges merely that Kyriazis "communicated with Liberty Highrise on behalf of all three Praxis companies," "is the manager of Praxis Dubai," is a "director and sole shareholder of Praxis Singapore," is the "director and registered Agent for Praxis USA," and held himself out as "the Legal Advisor . . . for Praxis Singapore and Praxis USA."  Am. Compl. ¶¶ 26, 29.  While those allegations, taken to be true, are sufficient to establish that the Praxis entities are alter egos *of one another* given Kyriazis's "overlap" as an "officer" and "director" of the three corporate entities, however, *William Passalacqua Builders*, 933 F.2d at 139, they are insufficient to establish that Kyriazis's

9

cross-involvement justifies deciding "to disregard the corporate form" of the Praxis entities entirely, *William Wrigley*, 890 F.2d at 601.

Evidence of financial commingling is particularly important in determining whether an individual is an alter ego of a corporation. Indeed, the Second Circuit has found clear error where district courts have held an individual principal to be an alter ego absent such evidence of financial comingling. *See, e.g., Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 132 (2d. Cir. 1997) (finding there was "no evidence that [the individual] used [the corporation's] funds for personal matters or intermingled corporate funds with his own"); *William Wrigley*, 890 F.2d at 601 ("We are unable to isolate any evidence which warrants the district court's decision to pierce the corporate veil and impose personal liability."). And, critically, the Amended Complaint does not allege that Kyriazis intermingled personal assets with the Praxis entities. *See Walpert v. Jaffrey*, 127 F. Supp. 3d 105, 130 (S.D.N.Y. 2015) (relying on evidence of personal assets being intermingled to find piercing the corporate veil equitable); *cf. Network Enters., Inc. v. APBA Offshore Prods., Inc.*, 427 F. Supp. 2d 463, 489–90 (S.D.N.Y. 2006) (finding piercing the corporate veil inappropriate where there was "no evidence" that an individual defendant "intermingled [the corporation's] assets with his own personal assets").

Rather, the closest the Amended Complaint comes to alleging Kyriazis is an alter ego of the Praxis entities is in its generic assertion that "Kyriazis dominates and controls the Praxis Defendants and disregards their corporate form to the extent that each is actually carrying on business and operations as one joint entity. Defendants are alter egos, each liable for the debts of the other." Am. Compl. ¶ 35. But that allegation merely recites the legal standard for piercing the corporate veil. "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements

10

of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (cleaned up); *see also Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017); *Metro. Transp. Auth. v. Triumph Advert. Prods., Inc.*, 497 N.Y.S.2d 673, 675 (N.Y. App. Div. 1986) ("Mere conclusory allegations that the corporate structure is a sham are insufficient to warrant piercing the corporate veil.").

The Court therefore concludes that the Amended Complaint fails to plausibly allege that Kyriazis is an alter ego of the Praxis entities, and determines that exercising personal jurisdiction over Kyriazis, a Greek citizen, under the alter ego theory in this action would not be equitable. *See William Wrigley*, 890 F.2d at 600–01 (noting "the general principle followed by the courts has been" that piercing the corporate veil is proper "when doing so would achieve an equitable result"). Identifying this pleading failure in the first instance, however, warrants that the Court grant the motion to dismiss the action against Kyriazis without prejudice. The "usual practice" in this Circuit is to permit amendment of a complaint. *See Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 446–47 (S.D.N.Y. 2014) (citing *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)). Because it is conceivable that Plaintiff could plead additional facts to remedy the jurisdictional pleading deficiencies identified herein—for example, facts alleging that Kyriazis commingled personal assets with those of the Praxis entities, *see A/S Domino Mobler*, 669 F. Supp. at 594—Plaintiff is granted further leave to amend, provided it has a good faith basis for doing so.

### III.   Venue

As Praxis Singapore argued in its motion to dismiss the initial Complaint, Praxis USA and Kyriazis additionally argue that venue is improper because none of the requirements of the federal venue statute, *see* 28 U.S.C. § 1391, are met. Mot. at 7. But, because this action sounds in

admiralty, that section does not apply. *See* 28 U.S.C. § 1390(b). "In the admiralty context, forum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Am. Int'l Grp. Eur. S.A. (Italy) v. Franco Vago Int'l, Inc.*, 756 F. Supp. 2d 369, 376 (S.D.N.Y. 2010) (cleaned up); *see also Ferrostaal, Inc. v. M/V EAGLE*, No. 02-cv-1887 (NRB), 2003 WL 21496689, at *1 (S.D.N.Y. June 30, 2003) ("It is a well-established principle of admiralty law that forum selection clauses are heavily weighted."). Because Praxis USA and Kyriazis have made no showing of unreasonableness in this action, the Court denies the motion to dismiss on the basis of venue.

## IV.     *Forum Non Conveniens*

Lastly, Praxis USA and Kyriazis urge—in a single sentence—that the Court should alternatively dismiss this action on the basis of *forum non conveniens*. Mot. at 8. District courts "enjoy broad discretion in applying [the] principle" of *forum non conveniens*. *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005). A court has discretion, for instance,

> to dismiss a case on the ground of *forum non conveniens* when an alternative forum has jurisdiction to hear the case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems.

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (cleaned up). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. Of Tex.*, 571 U.S. 49, 63 (2013) (cleaned up). Indeed, the Supreme Court has observed that "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* (cleaned up).

The Court finds that the Amended Complaint alleges sufficient facts to establish that Praxis

Dubai—and, by extension, its alter egos, Praxis Singapore and Praxis USA—agreed that any disputes stemming from the M.V. MENALON transaction would be litigated in this District. Because Praxis USA has not proffered any reason why this is the kind of "exceptional" case compelling the Court to disregard the forum-selection clause, and in deference to Plaitniff's decision to file suit in this District, the Court denies the motion to dismiss on the basis of *forum non-conveniens*.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied with respect to the action against Praxis USA, and granted with respect to the action against Kyriazis, albeit without prejudice. Plaintiff may further amend the pleadings within thirty (30) days to the extent that it has a good faith basis to do so. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 44.

SO ORDERED.

Dated:   September 30, 2022
         New York, New York

_____
Hon. Ronnie Abrams
United States District Judge